UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JORDAN SIMON HALL,

   Plaintiff,      Case No. 1:14-cv-13767
           Judge Thomas L. Ludington
v.           Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

   Defendant.
_____/

## REPORT AND RECOMMENDATION REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 13) and DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 14)

**I. RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 13), **GRANT** Defendant's motion for summary judgment (DE 14),

and **AFFIRM** the Commissioner's decision.

**II. REPORT**

  Plaintiff, Jordan Simon Hall, brings this action under 42 U.S.C. § 405(g) and

42 U.S.C. § 1383(c)(3) for review of a final decision of the Commissioner of

Social Security ("Commissioner") denying his applications for disability insurance

benefits (DIB) and supplemental security income benefits (SSIB).  This matter is

before the United States Magistrate Judge for a Report and Recommendation on

Plaintiff's motion for summary judgment (DE 13), the Commissioner's cross motion for summary judgment (DE 14) and the administrative record (DE 6).

## A.    Background

Plaintiff filed his applications for DIB and SSIB on August 31, 2011, alleging that he has been disabled since December 1, 2010, at age 20.  (R. at 146-150, 151-156.)  Plaintiff alleges disability as a result of paranoid schizophrenia, panic, thought, and bipolar disorder.  (R. at 168-179.)  Plaintiff's applications were denied.  (R. at 122-126, 127-130.)

Plaintiff sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  (R. at 131-132.)  ALJ Christopher Inama held a hearing on March 13, 2013, at which Plaintiff was represented by counsel and Vocational Expert (VE) Timothy Shaner testified.  (R. at 34-65.)  On April 19, 2013, ALJ Inama determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 16-33.)

Plaintiff requested review of the hearing decision.  (R. at 15.)  On August 1, 2014, the Appeals Council denied Plaintiff's request for review.  (R. at 1-4.)  Thus, ALJ Inama's decision became the Commissioner's final decision.

Plaintiff then timely commenced the instant action on September 30, 2014. (DE 1.)

## B.    Plaintiff's Medical History

Plaintiff alleges that he has been disabled since December 1, 2010. (*See* R. at 166.) More than 500 pages of Plaintiff's medical records were available to the ALJ. R. at 213-754 (Exhibits 1F-20F). Of particular import are hospitalization records and those of his treating psychiatrist, Joel Young, M.D.

### 1. Hospitalizations

Plaintiff was hospitalized at St. Joseph Mercy-Oakland from June 11, 2009 to June 30, 2009 (R. at 449-555; *see also*, R. at 556-568 [Ex. 13F]), from July 1, 2009 to July 14, 2009 (R. at 399-448 [Ex. 13F]) and from July 14, 2009 to July 24, 2009 (R. at 325-398 [Ex. 13F]). However, each of these hospitalizations took place prior to December 1, 2010, Plaintiff's alleged disability onset date.[1] Plaintiff was admitted to Havenwyck Hospital in Auburn Hills, Michigan from August 17, 2011 to September 13, 2011. (R. at 569-578 [Ex. 14F]). His GAF on admission was 25. On discharge, Plaintiff's GAF was 42, and his diagnoses included bipolar disorder fair with psychotic features. (R. at 570.)

### 2. Treating Psychiatrist Joel Young, M.D.

Plaintiff treated regularly with psychiatrist Joel Young, M.D. of Rochester Center for Behavioral Medicine in Rochester Hills, Michigan. (R. at 579-611 [Ex. 15F], 616-716 [Ex. 17F], 717-722 [Ex. 18F], 723-728 [Ex. 19F], 729-754 [Ex.

---

[1] At Step 3, the ALJ implies Plaintiff was hospitalized for bipolar disorder on August 1, 2011. (R. at 22.) However, the August 1, 2011 records to which the ALJ referred are actually hematology and chemistry labs. (R. at 315-317 [Ex. 13F]).

20F].)  On at least ten different treatment dates, between September 14, 2011 and January 29, 2013, Dr. Young diagnosed Plaintiff with bipolar disorder.  (R. at 584, 592, 619, 624, 660, 667, 679, 684, 688, 694, 697, 733, 739, 749.)

Dr. Young's diagnoses differed, at least somewhat, in other instances.  For example, on August 1, 2011, Dr. Young diagnosed Plaintiff with AD/HD (combined type), and on August 17, 2011 Dr. Young diagnosed Plaintiff with bipolar disorder manic and a GAF of 40.  (R. at 579, 582.)  On January 25, 2012, Dr. Young diagnosed Plaintiff as schizoaffective, and on March 13, 2012, Dr. Young diagnosed Plaintiff with bipolar disorder vs schizoaffective disorder.  (R. at 651, 642.)  Also, on January 14, 2013, Dr. Young diagnosed Plaintiff with bipolar disorder psychosis.  (R. at 743.)

Meanwhile, on September 12, 2012, signed a medical source statement regarding ability to perform work-related activities.  At the time, Plaintiff was not in a depressive or manic episode.  (R. at 717, 723.)  Dr. Young opined that Plaintiff was not currently disabled from all gainful employment, including sedentary or less than sedentary jobs; however, Dr. Young also opined that, due to his mental health issues, Plaintiff was unable to sustain employment in a competitive environment for an 8 hour day, five days per week on a consistent basis.  (R. at 719, 720.)  According to Dr. Young, even when not in the midst of an episode, Plaintiff had certain limitations on his ability to perform work related activities.

For example, Plaintiff had unlimited or very good socially appropriate behavior, limited but satisfactory ability to understand, remember and carry out very short and simple instructions, and limited but satisfactory ability to maintain attention for two hour segment.  (R. at 720-721, 726-727.)

### C.    Hearing Testimony (March 13, 2013)

#### 1.    Plaintiff's Testimony

Plaintiff Jordan Simon Hall testified at the March 13, 2013 hearing.  (R. at 40-58.)  He graduated from Waterford Kettering High School in 2008 and attended some college.  (R. at 40-41.)  Plaintiff's past work included brief jobs as a cable technician and a buffet attendant, each of which were cut short because he could not perform on his medication.  (R. at 41-42; *see also*, R. at 43.)  At the time of the hearing, he was living with his parents and not working.  (R. at 40-41.)

Plaintiff testified that he has been diagnosed with paranoid schizophrenia and acute manic bipolar disorder.  (R. at 43, 47.)  He also claims to have adrenal and thyroid problems.  (R. at 46, 55.)  He is currently taking Zyprexa, lithium, Depakote, Ativan, and Synthroid.  (R. at 50.)  The side effects include restless leg syndrome, post-traumatic stress tremors, and night terrors.  Plaintiff testified that his ability to focus and concentrate is not that good and is affected by the medication.  He takes his medication every six hours.  He has trouble remembering to take his medication, and his parents help him remember.  (R. at 51.)  Plaintiff

5

has good days and bad days, but "it just depends on how [his] medication is regulated . . . ."  (R. at 53.)

Plaintiff testified that he was hospitalized in two facilities.  (R. at 44.) Plaintiff claims his hospitalization during 2009 at St. Joseph Mercy-Oakland was precipitated by the death of one of his friends; since then, he has had difficulty dealing with many aspects of his life.  (R. at 45.)  Plaintiff explained that his hospitalization during 2011 at Havenwyck was the result of his acute manic bipolar disorder.  (R. at 45-46.)  He fears places like these.  (R. at 46.)

### 2.     Vocational Expert Testimony

VE Timothy Shaner also testified.  (R. at 58-64.)  The VE explained that only one job in Plaintiff's history was performed for more than just a couple of months, namely,  a cleaner/housekeeper job, which Plaintiff worked for a little over a year, classified as light exertion with a specific vocational preparation (SVP) of 2.  (R. at 59, 61.)

The ALJ asked the VE about a hypothetical individual with the same age, education level, and work experience as Plaintiff who was limited to unskilled work at all exertional levels with the additional limitations of:  never climbing ladders, ropes, or scaffolds; avoiding concentrated exposure to hazards such as heights and machinery; simple, routine, repetitive tasks with only simple work-related decisions and few workplace changes; and occasional public contact.  (R. at

58-59, 61.)  The VE testified that such an individual could perform the work of housekeeper.  (R. at 61.)  In addition, such an individual could perform work as an assembler, laundry worker and packager.  (R. at 62.)

In a second hypothetical, the ALJ added the condition of no fast-paced production requirements.  (R. at 62.)  The VE testified that such an individual could perform the work of a housekeeper, as well as a laundry worker and packager; however, to a certain extent, it would erode the ability to perform the assembler position.  (R. at 62-63.)

In addition, the VE testified that, with respect to an unskilled position, missing more than one day per month for a random or unexcused reason would lead to termination.  (R. at 63.)  The VE also testified that fifteen to twenty percent off-task beyond normal breaks and lunch periods would lead to disciplinary action. (R. at 64.)

### D.     The Administrative Decision[2]

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

> 1.     Is the claimant engaged in substantial gainful activity?
> 2.     Does the claimant suffer from one or more severe impairments?
> 3.     Do the claimant's severe impairments, alone or in combination, meet

or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

ALJ Inama rendered his decision on April 19, 2013. (R. at 16-33.) At Step 1, the ALJ found that Plaintiff has not engaged in substantial gainful activity since December 1, 2010, the alleged onset date. (R. at 21.)

At Step 2, the ALJ found that Plaintiff has the severe impairment of bipolar disorder. (R. at 21.)

At Step 3, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. at 21-23.)

At Step 4, the ALJ found that Plaintiff has the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following non-exertional limitations: he can never climb ladders, ropes, or scaffolds. He must avoid concentrated exposure to hazards (*e.g.*, heights and machinery). He is limited to simple, routine, repetitive tasks, with only simple work-related decisions and few workplace changes, and occasional public contact. (R. at 23-27.) Furthermore, the ALJ concluded that Plaintiff is capable of

---

4.    Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5.    Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

performing past relevant work as a housekeeper, as both actually and generally performed.  (R. at 27.)

Alternatively, at Step 5, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that Plaintiff also can perform, including assembler, laundry worker and packager.  (R. at 27-28.)

### E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the

court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### F.     Analysis

In his motion for summary judgment, Plaintiff sets forth one statement of error: "The ALJ failed to properly evaluate Plaintiff's treating doctor's

10

professional opinion."  (DE 13-1 at 3-5; *see also* DE 13 at 2.)[3]  The Commissioner

opposes Plaintiff's motion, asserting that:

1.    Plaintiff has not established that his overall argument has any
      relevance in light of the applicable standard of review.
2.    Plaintiff has not established that he meets Listing 12.04 (Affective
      Disorders).
3.    Substantial evidence supports the ALJ's RFC determination.

(DE 14 at 3, 7-17.)

The Undersigned will address each of the parties' arguments in turn.

### 1.    Substantial Evidence Supports the ALJ's Weighing of Opinion Evidence.

The ALJ relied upon the records of Dr. Young at several points in the

sequential process:

- At Step 2, where the ALJ concluded that Plaintiff had the
  severe impairment of bipolar disorder, the ALJ relied upon,
  among other records, Dr. Young's September 12, 2012 medical
  source statement.  (R. at 723-728 [Ex. 19F]).

- At Step 3, where the ALJ found that the severity of Plaintiff's
  mental impairment did not meet or medically equal the criteria
  of listing 12.04 (Affective Disorders), the ALJ found that
  Plaintiff had mild restriction in his activities of daily living,
  moderate difficulties in his social functioning, and moderate
  difficulties regarding concentration, persistence or pace.[4]  As to

---

[3] Similarly, in his Statement of Issues, he identifies only legal query:  "**Where**
Plaintiff's treating doctor's opinion was consistent with a disability determination
**whether** the ALJ gave proper weight [to] his credibility."  (DE 13 at 2 (emphasis
in original).)

[4] As to each of these conclusions, the ALJ relied upon Plaintiff's function report.
(R. at 22, 180-187 [Ex. 4E].)

social functioning and concentration, persistence or pace, the
ALJ relied in part upon Dr. Young's September 12, 2012
medical source statement. (R. at 723-728 [Ex. 19F]).

- Within his Step 4 RFC determination, the ALJ noted that the
objective medical evidence "documents a longitudinal history
of treatment for mental illness including bipolar disorder with
manic episodes." Here, the ALJ considered several of Dr.
Young's notes. Ultimately, the ALJ rejected Dr. Young's
September 12, 2012 statement and assigned it little weight.

(*See* R. at 21, 22, 24-26.)

Plaintiff takes issue with the ALJ's assignment of weight to the opinion
evidence, alleging that the ALJ "decided to pick and choose when he would rely on
the treating doctor, Dr. Young's, professional opinion." DE 13-1 at 4. In
opposition to the ALJ's characterization of Dr. Young's statement as "internally
inconsistent," Plaintiff contends that the *very nature* of his bipolar condition is
inconsistent. (DE 13-1 at 5.)

However, the Court need not remand simply because the ALJ adopted some
portions of Dr. Young's September 12, 2012 statement while dismissing other
portions. By way of background, on some issues, the ALJ relied favorably upon
Dr. Young's September 12, 2012 source statement. For example, in his Step 3
finding of moderate difficulties in social functioning, the ALJ relied in part upon
Dr. Young's September 12, 2012 statement that Plaintiff has unlimited or very
good mental abilities and aptitude to interact appropriately with the general public
and to maintain socially appropriate behavior, *as well as* Plaintiff's own report

12

about social activities. (R. at 22, 727; *see also*, R. at 184-185.) Moreover, in finding that Plaintiff had moderate difficulties in concentration, persistence or pace, the ALJ relied in part upon Dr. Young's September 12, 2012 statement that Plaintiff had limited but satisfactory mental abilities and aptitudes to understand, remember and carry out very short and simple instructions and to maintain attention for a two hour segment, *as well as* Plaintiff's own report that he can pay attention for an hour or two when watching a movie. (R. at 22, 726, 185.) Further, at Step 4, the ALJ acknowledged Dr. Young's opinion that Plaintiff could manage benefits in his own best interest when not in a manic episode, and further acknowledged Dr. Young's opinion that, when not in the midst of an episode, Plaintiff had "unlimited or very good," "limited but satisfactory," or "seriously limited" mental abilities and aptitudes in various functional areas. (R. at 26, 719, 720-721.)

Later, where the ALJ discounted Dr. Young's source statement, he gave good reasons for doing so. (*See* 20 C.F.R. § 404.1527(c)(2), 416.927(c)(2).) At Step 4, the ALJ explained that:

- the source statement was "internally inconsistent," because it states Plaintiff is not currently disabled from all gainful employment but also states Plaintiff cannot sustain employment in a competitive environment for an 8 hour day, five days a week on a consistent basis due to his mental health (R. at 717-722 [Ex. 18F]);

- the source statement was inconsistent with Dr. Young's progress notes indicating some GAF scores in the 70s (*see*, *i.e.*, R. at 733, 739 [Ex. 20F]);

- the source statement was inconsistent with Plaintiff's self-reported activities of daily living, which, as cited elsewhere by the ALJ, include no problem with personal care, going outside every day, shopping in stores once every couple of months for a couple of hours, and regularly attending church on Sunday and his nephew's football games, working on a house purchased by his friend, socializing with friends often, and smoking marijuana once in a while (R. at 25, 181-185 [Ex. 4E], 738, 745, 753, 754 [Ex. 20F]);

- the source statement "appeared to rely heavily on the claimant's subjective reports of symptoms and limitations[;]" and,

- the source statement "is also without support from other evidence in the medical file, which renders it less persuasive."

(*See* R. at 25-26.)

In addition to the foregoing consideration of treating psychiatrist Dr. Young's source statement, the ALJ gave other good reasons for his decision. For example, the ALJ gives some weight to the RFC assessment of non-examining State Disability Determination Services physician, presumably psychiatrist Leonard C. Balunas, Ph.D. (R. at 26, 104-106, 115-117.)[5] "[T]he opinions of State agency medical and psychological consultants and other program physicians

---

[5] "State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation."  20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i).

14

and psychologists can be given weight only insofar as they are supported by evidence in the case record . . . ."  SSR 96-6P, 1996 WL 374180 (July 2, 1996). Among other things, Dr. Balunas opined that Plaintiff was "moderately limited" in his ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, interact appropriately with the general public, and respond appropriately to changes in the work setting.  (R. at 105-106, 116-117.)  This opinion appears to be supported by evidence in the case record.  Moreover, the ALJ observed, with appropriate record citation, that "the treatment has been generally successful in controlling [the allegedly disabling] symptoms[,]" "there is evidence the claimant has not been entirely compliant in taking prescribed medications," "treatment has mostly been routine and conservative[,]" and "the side-effects are mild and do not interfere with the claimant's ability to perform work activities in any significant manner."  (R. at 25-26.)

Finally, a quick comment about fairness is in order.  Plaintiff asserts that "it is unfair and wrong to use a treating expert's opinion when it furthers the ALJ's agenda and then throw out his professional opinion when it negates."  DE 13-1 at 5.  This suggestion of the ALJ having "an agenda" implies a bias or prejudice against the claimant.  However, "[w]e presume that judicial and quasijudicial officers, including ALJs, carry out their duties fairly and impartially.  [Plaintiff]

15

has the burden of persuading us otherwise, which she can do only with *convincing evidence* that a risk of actual bias or prejudgment is present." *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 856 (6th Cir. 2011) (internal citations and quotations omitted) (emphasis added).  "[A]ny alleged prejudice on the part of the decisionmaker must be evident from the record and cannot be based on speculation or inference." *Collier v. Comm'r of Soc. Sec.*, 108 F. App'x 358, 364 (6th Cir. 2004) (citation and quotation omitted).  Plaintiff's argument that the ALJ's treatment of Dr. Young's opinion(s) was "unfair and contradictory," (*see* DE 13-1 at 4, 5), does not constitute "convincing evidence" of an "agenda."  Therefore, remand on the basis that the ALJ had an agenda, bias or prejudice is not warranted.

In sum, as illustrated above, the ALJ properly addressed Dr. Young's source statement, despite the alleged differential treatment at Step 3 and Step 4, and he offered good reasons for his decision denying benefits.  "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work . . . ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).  Plaintiff has not done so here.

> **2.     The Court need not address Defendant's argument that Plaintiff has not established that he meets Listing 12.04 (Affective Disorders).**

Defendant argues that Plaintiff "fails to establish that he meets Listing 12.04 (Affective Disorders)."  (DE 14 at 10-15.)  However, the Court should construe Plaintiff's motion as solely challenging the ALJ's assignment of weight to Plaintiff's treating psychiatrist's opinion(s), as identified in his Statement of Issues and in the lone subheading in his Argument.  (DE 13 at 2, 3-5.)  Although Plaintiff does mention the ALJ's Step 3 finding that "[t]he severity of the claimant's mental impairment does not meet or medically equal the criteria of listing 12.04[,]" he does so only to illustrate the alleged different treatment given by the ALJ to Dr. Young's source statement at Step 3 versus Step 4.  (DE 13-1 at 4-5, R. at 22, 25-26.)  In other words, Plaintiff has not briefed a Step 3 statement of error.  _In re Squire_, 617 F.3d 461, 470 (6th Cir. 2010) ("we do not address issues not briefed for us.") (referencing _Koubriti v. Convertino,_ 593 F.3d 459, 471 (6th Cir.2010)).

### G.    Conclusion

In sum, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 13), **GRANT** Defendant's motion for summary judgment (DE 14), and **AFFIRM** the Commissioner of Social Security's decision.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

18

Dated: December 4, 2015          s/Anthony P. Patti
                                 Anthony P. Patti
                                 UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record on December 4, 2015, electronically and/or by U.S. Mail.

                                 s/Michael Williams
                                 Case Manager for the
                                 Honorable Anthony P. Patti